

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

SLT:GMP
F.#2011R01661/NY-NYE-648Z

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

December 9, 2013

<u>By Hand and ECF</u>
The Honorable Dora L. Irizarry
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re: <u>United States v. Gjavit Thaqi</u>
          <u>Criminal Docket No. 11-486 (S-1)(DLI)</u>

Dear Judge Irizarry:

      The government respectfully submits this letter in advance of sentencing in the above-captioned case, which is scheduled for December 13, 2013. For the reasons stated below, the government respectfully requests that the Court sentence the defendant within the applicable advisory Guidelines range of 110 to 137 months.

I.      <u>Background</u>

      In June 2007, agents from the New York Organized Crime Drug Enforcement Strike Force ("OCDESF") began an investigation into a large-scale narcotics distribution organization that was responsible for distributing large quantities of marijuana, cocaine, MDMA and prescription opiates throughout the United States, Canada and Europe. (Presentence Report ("PSR") ¶¶ 4-6).

      Beginning in at least 2001, the defendant Gjavit Thaqi participated in coordinating the importation of illegal narcotics into the United States along with his cousins, Arif Kurti and Ibrahim Kurti, and the elder brother of co-defendants Bajram and Selman Lajqi, and others. After the arrest of Arif Kurti, Thaqi became the group's main member in the United States, organizing much of the drug trafficking into, and through, the United States, which mainly consisted of marijuana trafficking. (PSR ¶ 14). Toward the end of the conspiracy in 2010 and 2011, Thaqi was moving into distributing oxycodone pills. <u>Id</u>.

2

During the early 2000s, Thaqi was involved in marijuana distribution with Arif Kurti and others, who obtained marijuana from Canada. (PSR ¶ 50). In approximately 2005, once co-defendant Alberto Mercado and other co-conspirators obtained a connection with a Mexican cartel to import tractor trailer loads of marijuana, Thaqi began to purchase from them. Id. On March 1, 2007, Thaqi was arrested for possessing a false passport; he and several co-conspirators had been driving across country with the intention of paying Mexican cartel representatives for marijuana. When they were stopped in St. Louis, Missouri, Thaqi and his co-conspirators were in possession of $209,030 in cash inside of a hidden trap in the car, which represented a payment for marijuana. Id.

Shortly after being released from custody in August 2009, Thaqi resumed his marijuana trafficking activities. (PSR ¶ 51). Initially, Thaqi purchased marijuana from co-defendant Gjevalin Berisha for re-sale. Through Arif Kurti, Thaqi then began to develop his own marijuana source connections in Canada, from whom Thaqi received shipments of marijuana. Id.

Through a long-time acquaintance, co-defendant Valter Memia, Thaqi was introduced to Fabian Mihaj, who brokered several additional marijuana sales from Canada during the 2010-2011 period of the conspiracy. (PSR ¶ 52). Thaqi also obtained marijuana during this period from Orestes Ferrer, a grow house operator. Thaqi had met Ferrer while in prison in the late 1990's in Florida. Toward the end of the conspiracy, Thaqi and his co-defendants purchased marijuana from a grow house located in Humbolt County, California. Id.

Toward the end of the conspiracy, in 2011, Thaqi became involved in the distribution of oxycodone pills, after being introduced to a group of corrupt physicians in South Florida. (PSR ¶ 53). Thaqi had packages of oxycodone sent through the mail on his behalf for later distribution. Id.

During the instant offense, Thaqi was primarily a wholesale marijuana distributor who sold to other distributors, such as Memia, Nefail Mehovic, Agron Zenelaj, Hasan Kurti, Joseph Bux, Angelo Germano, Giovanni Difuccia, and others. (PSR ¶ 54). Thaqi allowed these co-conspirators to purchase on consignment. Based on an extremely conservative estimate, Thaqi is being held responsible for between 400 and 700 kilograms of marijuana, which includes the oxycodone that he distributed. See (PSR ¶ 55).

In addition to the marijuana trafficking activities they jointly coordinated, Thaqi and Kurti also had extensive discussions about plans to obtain large quantities of cocaine for transport to Europe. In particular, Kurti stated that he had cocaine dealers in Spain who would distribute upwards of 50 kilograms per week for him. (PSR ¶¶ 48-49). Kurti and Thaqi discussed obtaining cocaine in amounts of 150 to 200 kilograms at a time, and Thaqi reached out to two convicted cocaine traffickers in Colombia and Venezuela in an attempt to obtain these cocaine shipments.[1] Ultimately, none of these plans came to fruition.

On May 22, 2013, the defendant pleaded guilty, pursuant to a plea agreement, to a lesser-included offense of Count Three of the superseding indictment, charging the defendant with conspiracy to distribute and possess with intent to distribute at least 100 kilograms of marijuana, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(B). As a result, he faces a statutory mandatory minimum sentence of 5 years.

II. Discussion

    A.    Legal Standard

The Sentencing Guidelines are advisory, not mandatory. United States v. Booker, 543 U.S. 220, 258-60 (2005). However, the Supreme Court held in Booker that sentencing courts must consider the Guidelines in formulating an appropriate sentence. Id. In Gall v. United States, 552 U.S. 38 (2007), the Supreme Court set forth the procedure for sentencing courts to follow in light of Booker:

> [A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines

---

[1] Thaqi met the two cocaine suppliers while they were all serving prison time together in the United States for cocaine trafficking convictions. Both traffickers were subsequently deported back to their home countries following their release from custody.

>should be the starting point and the initial benchmark.

Gall, 552 U.S. at 49 (citation omitted). Next, a district court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, [a district court] may not presume that the Guidelines range is reasonable. [A district court] must make an individualized assessment based on the facts presented." Id. at 49-50 (citation and footnote omitted).

    B.   The Advisory Guidelines Range Is 110 to 137 Months

The Probation Department has determined that the defendant's adjusted offense level is 33, the defendant is in Criminal History Category V, and the advisory Guidelines sentencing range is 151 to 188 months' imprisonment. (PSR Addendum pp. 2-3). The government supports a further two-point reduction for global disposition pursuant to Guidelines Policy Statement 5K2.0. (PSR ¶ 198). Including this reduction, the resulting advisory Guidelines sentencing range for Count Three, based on the Probation Department's calculation, is 130 to 162 months. Id.

Both parties disagree with the Probation Department's Guidelines calculation in one respect. Namely, the parties agree that the defendant's 2007 arrest for possessing a false passport should count as part of the instant offense conduct. As a result, the defendant's Criminal History should be Criminal History IV, rather than Criminal History V. This results in an advisory Guidelines range of 110 to 137 months.

Defendant contends that the Probation Department erroneously included a 2-level enhancement pursuant to U.S.S.G. § 2D1.1(b)(14)(c), which applies if a defendant receives a supervisory role in the offense and was "directly involved in the importation of a controlled substance." The government agrees that this enhancement properly applies to the defendant. Although acknowledging that the enhancement applies based on the facts of the offense conduct, the defendant contends that the Court should refuse to apply the enhancement because: (1) it was not included in the Guidelines estimate in the plea agreement; and (2) it was not applied to any of the co-defendants to whom it was applicable. Both arguments are without merit. The failure to include this enhancement in the plea agreement was not the product of a negotiated settlement (nor would the Court be bound by the terms of such an agreement even if it was);

rather, it was simply an oversight by counsel based on the fact that the enhancement was a recent addition to the Guidelines. Moreover, there are no other similarly-situated co-defendants to whom the enhancement was not applied.  The only other defendant who received an aggravating role adjustment and was directly involved in the importation of a controlled substance subsequent to the effective date of the amendment was Arif Kurti, to whom Probation did apply the same enhancement.  Accordingly, the government agrees with the PSR on this issue.

    C.    A Sentence Within the Guidelines Range Is Appropriate in This Case

Based on the factors set forth in 18 U.S.C. § 3553(a), a sentence within the Guidelines range is appropriate in this case.

In the defendant's submission, he seeks a sentence below the advisory Guidelines mainly in light of his family circumstances and the fact that he will not be eligible for certain programs as a result of his immigration status.  While the government acknowledges that the defendant's family faces difficult health challenges, there appear to be other family members – such as the defendant's sister and Magdalena Nikollaj's siblings – who have been willing and able to provide additional financial and emotional support to the defendant's mother, girlfriend and children.  Moreover, there is little evidence in the record that the defendant held sufficient legitimate employment prior to his incarceration that would have enabled him to support his family.

A sentence within the advisory Guidelines range is necessary to reflect the seriousness of the offense, promote respect for the law and provide just punishment.  18 U.S.C. § 3553(a)(2)(A).  As noted above, the defendant's offense of conviction is a serious crime that merits substantial punishment.  The defendant was not only involved in trafficking a minimum of 400 to 700 kilograms of marijuana – itself a major crime – he was also involved in the trafficking of oxycodone and attempts to obtain large quantities of cocaine for distribution in Europe (the cocaine is not reflected in the advisory Guidelines range).  Thus, a sentence within the Guidelines is necessary to promote respect for the law and just punishment.

Moreover, this is not the defendant's first involvement with serious criminal activity; nor was it a brief, episodic event. As discussed in the PSR, the defendant has spent nearly half of his adult life in prison as a result of his commission of serious crimes including illegal gun trafficking, cocaine trafficking and possessing a fraudulent passport. Indeed, as outlined in the PSR, the defendant was engaged in significant international narcotics trafficking as far back as 2004, and only took a brief break from narcotics trafficking because he was incarcerated. He has trafficked, or attempted to traffic, at least three different controlled substances – marijuana, cocaine and oxycodone – in at least three different countries (the United States, Canada and Spain). And, after serving his second sentence, he wasted no time in re-involving himself with narcotics trafficking. Indeed, rather learning from his past mistakes, the defendant used his prior stints in prison as virtual networking events, using the contacts he made in prison to expand upon his drug trafficking business. Thus, the defendant's twenty-two-year criminal history reveals a disturbing pattern of escalating criminality that was undeterred by previous contacts with the criminal justice system.

Accordingly, a sentence within the advisory Guidelines range is also necessary to afford adequate deterrence to criminal conduct and to protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a)(2)(B) & (c). "Under section 3553(a)(2)(B), there are two major considerations: specific and general deterrence." United States v. Davis, No. 08-CR-332 (JBW), 2010 WL 1221709, at *2 (E.D.N.Y. March 29, 2010). Both considerations support the imposition of a serious term of imprisonment in this case. A sentence within the advisory Guidelines range is necessary to deter others who are in a position to choose between a law-abiding life and a life of crime, and to protect the public from future crimes of the defendant – who has already demonstrated a repeated pattern of recidivism.

III. Conclusion

In this case, given all of the facts and circumstances discussed above, a sentence within the Guidelines range is necessary in order to achieve the purposes set forth in 18 U.S.C. § 3553(a). Therefore, and for all of the foregoing reasons, the government respectfully submits that the Court

should impose a sentence within the advisory Guidelines range of 110 to 137 months.

                Respectfully submitted,

                LORETTA E. LYNCH
                United States Attorney
                Eastern District of New York

By:   /s/
       Steven L. Tiscione
       Gina M. Parlovecchio
       Assistant U.S. Attorneys
       (718) 254-6317/6228

cc:  MaryAnn Betts, U.S. Probation Officer (by E-mail)
    Susan Kellman, Esq. (by ECF)
    Clerk of Court (DLI) (by ECF)